1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | Case No.  1:12-cv-01510-LJO-SAB |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE PARTIALLY GRANTED** |
| v. | |
| RICHARD JESUS GARCIA, | (ECF NO. 9) |
| Defendant. | OBJECTIONS DUE WITHIN 14 DAYS |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed a motion requesting entry of default judgment on December 3, 2012.  (ECF No. 9.)  This matter was referred to the undersigned magistrate judgment for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303.

The hearing on Plaintiff's motion took place on Friday, February 15, 2013 at 9:00 a.m. in Courtroom 9.  For the reasons set forth below, the Court recommends that Plaintiff's motion be partially granted and judgment be entered in favor Plaintiff in the amount of $9,900.00.

## I.

## BACKGROUND

Plaintiff filed the complaint in this matter on September 13, 2012.  (ECF No. 1.)  Plaintiff's complaint alleges that Defendant Richard Jesus Garcia ("Defendant") is the

1

owner/operator of Guadalajara Restaurant, which is located at 1365 North Willow Avenue, Suite 160, Clovis, California 93619.  (Compl. ¶ 7.)  Plaintiff further alleges that Plaintiff is the exclusive distributor of the "'Star Power': Floyd Mayweather, Jr. v. Victor Ortiz, WBO Welterweight Championship Fight Program that was telecast nationwide on Saturday, September 17, 2011 (hereinafter referred to as "the Program").  (Compl. ¶ 14.)  Plaintiff alleges that Defendant illegally broadcasted the Program at his commercial establishment on September 17.  (Compl. ¶ 17.)  Plaintiff's complaint asserts claims for the violation of 47 U.S.C. § 605 and 47 U.S.C. § 553, for the California state law tort of conversion, and for the violation of California Business and Professions Code §§ 17200, et seq.

Defendant failed to file a responsive pleading.  On November 29, 2012, Plaintiff requested and obtained entry of default against Defendant.  (ECF Nos. 6-7.)  On December 3, 2012, Plaintiff filed the present motion for default judgment.  (ECF No. 9.)

Plaintiff's investigator submitted an affidavit stating that he visited Guadalajara Restaurant on September 17, 2011 and observed the Program being broadcast in a private party area of the restaurant.  (Decl. of Affiant, at pg. 2.)  The program was shown on three televisions in the restaurant.  (Id.)  The investigator counted "more than 14" people at the bar and restaurant area and "[t]he private party had more than 75 patrons."  (Id.)

Plaintiff also noted that he filed two separate lawsuits against Defendant in this Court for commercial signal piracy.  (Suppl. Decl. of Thomas P. Riley In Supp. Of Pl.'s App. For Def. J. By The Court ¶ 4.)  Plaintiff seeks enhanced damages because Defendant is a repeat offender.  (Id. ¶ 6.)

Defendant has not filed an answer or other responsive pleading.  However, on December 14, 2012, the Court received a handwritten correspondence from Defendant informing the Court that Defendant missed the hearing scheduled on December 13, 2012 and "would like to get a new court date."[1]  (ECF No. 12.)

---

[1] To the extent that Defendant's correspondence constitutes an "appearance" in this case, Plaintiff satisfied the requirements of Federal Rule of Civil Procedure 55(b)(2) by serving a copy of all moving papers on Defendant more than seven days before the hearing.  (See ECF No. 9.)

2

The hearing on Plaintiff's motion for default judgment was held on Friday, February 15, 2013 at 9:00 a.m. Defendant did not appear at the hearing. At the hearing, Plaintiff's counsel admitted that he had no information as to how Plaintiff intercepted the broadcast for the Program. Plaintiff counsel was also asked whether Plaintiff gave any kind of warning or notice to Defendant regarding his illegal interception of television broadcasts before September 17, 2011. The Court noted that the prior lawsuits identified by Plaintiff were both filed after September 17, the date of the illegal interception in this case, so it was unclear whether Plaintiff was a repeat offender in terms of knowing that his actions were unlawful. Plaintiff's counsel stated that while it is standard practice to notify and warn violators, he was unaware if it occurred in this particular case.

**II.**

**LEGAL STANDARDS FOR DEFAULT JUDGMENT**

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b), which states, in pertinent part:

> (2) **By the Court.** In all other cases[2], the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Upon entry of default, the complaint's factual allegations regarding liability are taken as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1235 (E.D. Cal. 2008). However, the complaint's factual allegations relating to the amount of damages are not taken as true. Geddes, 559 F.2d at 560. Accordingly,

---

[2] Rule 55(b)(1) governs entry of default judgment by the clerk in cases where the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, which does not apply in this case.

1   the amount of damages must be proven at an evidentiary hearing or through other means.

2   Microsoft Corp., 549 F. Supp. 2d at 1236.  Per Federal Rule of Civil Procedure 54(c), "[a] default

3   judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

4        Entry of default judgment is committed to the Court's discretion.  Eithel v. McCool, 782

5   F.2d 1470, 1471 (9th Cir. 1986).

6   **III.**

7   **DISCUSSION**

8        Plaintiff seeks default judgment totaling $112,200.00.  (Not. Of App. And App. For Def.

9   J. By The Court 3:10-12.)  Plaintiff elects to receive relief only with respect to his claims under

10  47 U.S.C. § 605 and his state law claim for conversion.  (Decl. of Thomas P. Riley in Supp. of

11  Pl.'s App. for Def. J. By The Court ¶ 6.)

12      **A.**     **Plaintiff's Request For Statutory Damages Under 47 U.S.C. § 605**

13       Plaintiff seeks $10,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II)

14  (hereinafter referred to as "(C)(i)(II) Damages") and $100,000.00 in "enhanced" statutory

15  damages under 47 U.S.C. § 605(e)(3)(C)(ii) (hereinafter referred to as "(C)(ii) Enhanced

16  Damages".  (Mem. Of P. & A. in Supp. Of Pl.'s App. For Def. J. by the Court ("MPA") 8:1-

17  20:4.)  Both categories of damages stem from the violation of 47 U.S.C. § 605(a).  Section 605(a)

18  prohibits the unauthorized interception and distribution of communications.  47 U.S.C. § 605(a).

19  "[L]iability under section 605 requires proof that a defendant has (1) intercepted or aided the

20  interception of, and (2) divulged or published or aided the divulging or publishing of, a

21  communication transmitted by the plaintiff."  California Satellite Systems v. Seimon, 767 F.2d

22  1364, 1366. (9th Cir. 1985).  Plaintiff's complaint states a claim for a violation of Section 605.

23  See J and J Sports Productions v. Coyne, 857 F. Supp. 2d 909, 914 (N.D. Cal. 2012) (commercial

24  establishment violated Section 605 by broadcasting pay-per-view boxing match without

25  authorization).

26  / / /

27  / / /

28  / / /

4

1          1.          Damages under (C)(i)(II)

Plaintiff requests the maximum amount of $10,000 pursuant 47 U.S.C. §

605(e)(3)(C)(i)(II), which states:

> (3)(A)  Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.
> ...
> (C) (i)  Damages awarded by any court under this section shall be computed, at the election of the aggrieved party[3], in accordance with either of the following subclauses;
> ...
>> (II)  the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just....

Courts have taken several different approaches when establishing the appropriate amount

of (C)(i)(II) Damages.  In Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196,

1198 (N.D. Cal. 2000), the Court awarded the statutory minimum of $1,000 and reasoned that

"distributors should not be overcompensated and statutory awards should be proportional to the

violation."  In Kingsvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir.

1999), the Ninth Circuit affirmed the District Court's $4,000 judgment based on the amount the

defendant would have had to pay to buy the rights to show the fights legally, i.e., Plaintiff's actual

loss.  In J & J Sports Productions, Inc. v. Betancourt, No. 08CV937 JLS (POR), 2009 WL

3416431, at *4 (S.D. Cal. Oct. 20, 2009), the Court considered the statute's policy of deterring

future violations and looked at whether the circumstances were egregious or unusual.

The Court finds that the approach approved in Lake Alice Bar is appropriate in assessing

(C)(i)(II) Damages and the Court will assess damages based upon the actual loss sustained.  An

award of $2,200.00 in this case is appropriate because, when viewed in light of the recovery

received under Plaintiff's conversion theory, the (C)(i)(II) Damages effectively impose a

punishment requiring Plaintiff to pay double what he would have paid had he lawfully acquired

the rights to the Program.  See discussion, infra, Part III.B.  Moreover, as discussed infra, Part

---

[3] The alternative method of calculating damages, which was not elected by Plaintiff, is the "actual damages suffered ... as a result of the violation."  47 U.S.C. § 605(e)(3)(C)(i)(I).

III.A.2, (C)(ii) Enhanced Damages open the door to additional penalties for egregious and willful

violations of Section 605.  Accordingly, the Court will award $2,200.00 in (C)(i)(II) Damages.

2.     "Enhanced" Damages under (C)(ii)

Next, Plaintiff requests the maximum amount of $100,000.00 in "enhanced[4]" damages,

pursuant to  47 U.S.C. § 605(e)(3)(C)(ii), which states:

> In any case in which the court finds that the violation was
> committed willfully and for purposes of direct or indirect
> commercial advantage or private financial gain, the court in its
> discretion may increase the award of damages, whether actual or
> statutory, by an amount of not more than $100,000 for each
> violation of subsection (a) of this section.

The (C)(ii) Enhanced Damages are analogous to punitive damages, as they are awarded at

the Court's discretion in cases where a defendant's actions are willful and for the purpose of

financial gain.  See BMW of North America, Inc. v. Gore, 517 U.S. 559, 580 (1996) (purpose of

punitive damages is to punish and deter egregiously improper conduct).

Determining whether Defendant's actions were willful is hampered because Plaintiff filed

a brief with minimal analysis of the facts specific to this case.  Federal courts have noted similar

briefs with minimal factual analyses.  See, e.g., J & J Sports Productions, Inc. v. Lozano, No. C

12-01247 WHA, 2012 WL 3660351 (N.D. Cal. Aug. 24, 2012) ("This boilerplate language is

identical to reasoning given by plaintiff in a previous default judgment action..."); J & J Sports

Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL 668065, at *5 (N.D. Cal. Feb. 19,

2010) ("The paperwork filed has not been directed at the facts of this case."); J & J Sports

Productions, Inc. v. Cardoze, No. C 09-05683 WHA, 2010 WL 2757106, at *4 (N.D. Cal. Jul. 9,

2010) ("plaintiff's memorandum...largely lacks arguments about the specific facts of the suit...");

Joe Hand Promotions, Inc. v. Streshly, No. 08CV2390-LAB (LSP), 655 F. Supp. 2d 1136, 1139

(S.D. Cal. 2009) ("The Court will not ... indulge Plaintiff's attempt to obtain the biggest judgment

it can by filing cookie-cutter pleadings that trivialize the particular facts of this case and ignore

---

[4] Although the term "enhanced" does not appear anywhere in the statute, courts have characterized the damages
under Section 605(e)(3)(C)(ii) as "enhanced" damages.  See, e.g., Joe Hand Promotions, Inc. v. Streshly, 655 F.
Supp. 2d 1136 (S.D. Cal. 2009); Kingvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196 (N.D. Cal. 2000).
Accordingly, the Court will use the same term when referencing damages under this section.

1   the voluminous case law...").

2          The Court recognizes the inference that Plaintiff's actions were willful, since it is unlikely

3   that the Program was intercepted inadvertently or in the absence of some deliberate act by

4   Defendant.   The Court also recognizes that defendants will not be deterred if the judgments

5   against them were limited to the licensing fees they should have paid, because defendants would

6   still enjoy a net gain if they were only required to pay licensing fees in the subset of cases when

7   they were caught pirating broadcasts.   However, as recognized in <u>Streshly</u>, there are varying

8   degrees of egregiousness when it comes to piracy.   <u>Streshly</u>, 655 F. Supp. 2d at 1139.   Factors

9   considered by the courts include the extent of the piracy (i.e., the number of people who watched

10  the pirated broadcast) and how much the defendant profited from the piracy (i.e., whether the

11  defendant imposed a cover charge to watch the broadcast or promoted the event).   <u>See, e.g.,</u>

12  <u>Kingsvision Pay-Per-View, Ltd. v. Backman</u>, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000).

13         Here, the extent of the piracy and Defendant's profits from the piracy appear to be

14  relatively modest.   Plaintiff's investigator only counted 14 people at Defendant's establishment

15  during the broadcast.[5]   (MPA 11:21-24.)   Defendant did not charge cover.   (MPA 11:24-25.)

16  There's no evidence that Defendant promoted the pirated broadcast to attract customers.

17         Moreover, at the hearing, Plaintiff's counsel admitted that he was unsure as to how

18  Defendant illegally intercepted the broadcast for the Program.   This fact is relevant for purposes

19  of assessing the egregiousness of Defendant's conduct.   A business owner who legally obtains a

20  residential license to view the Program and mistakenly violates his license by displaying it at his

21  commercial establishment may not be on the same level of egregiousness as a business owner

22  who purchases specialized equipment to descramble television broadcasts.   The Court is not

23  convinced by Plaintiff's argument that it would be impossible to investigate this issue in cases

24  where the defendant defaults.   Plaintiff's investigator could have observed and noted the type of

---

[5] It is worth noting that the investigator's affidavit states that "[t]he private party [area] had more than 75 patrons." (Decl. of Affiant 2.)  This appears to be a typo, since this significant number of patrons was not discussed in Plaintiff's brief.  Moreover, the investigator stated that the capacity of the <u>entire</u> restaurant was posted at 71.  (Decl. of Affiant 2.)  It would have been highly unusual if the number of patrons in one area of the restaurant was more than the capacity of the entire restaurant.

equipment used at the establishment or the service provider for the television broadcast.  Plaintiff could have conducted third party discovery to determine whether Plaintiff obtained a residential license to view the Program.  In the absence of this information or evidence of some effort to obtain this information, the Court is not inclined to grant the statutory maximum penalties requested by Plaintiff.[6]

On the other hand, Plaintiff characterizes Defendant as a repeat offender by identifying two other cases Plaintiff brought against Defendant in this Court.[7]  The fact that Defendant has been caught pirating broadcasts on three occasions supports the conclusion that Defendant's actions were willful, though it is worth noting that the two cases identified by Plaintiff were filed after the events alleged in this action occurred.  Accordingly, Defendant may not have known that his conduct was illegal, especially if he had been purchasing residential licenses and was unaware that displaying the Program at his commercial establishment was illegal.  It would have bolstered Plaintiff's showing of willfulness if Plaintiff had submitted evidence showing that Defendant received notices and warnings prior to committing the violation in this case, but Plaintiff has not submitted any such evidence.  However, Defendant now knows and any future violations may result in greater enhanced damages.

The Court finds that (C)(ii) Enhanced Damages in an amount equal to two-and-a-half times the amount Plaintiff would have paid to legally obtain a license to broadcast the Program ($5,500) is appropriate in this case.  Such an amount is sufficient to deter future violations while avoiding the imposition of a fine completely out of proportion with the egregiousness of Defendant's conduct.  In calculating damages, the Court is mindful of the due process limitations that apply in the context of punitive damages awards.  See BMW of North America, Inc. v. Gore,

---

[6] At the hearing, Plaintiff was advised that in future requests for default judgment submitted in this Court, any request for the maximum amount of statutory penalties should be accompanied by an evidentiary showing justifying the maximum amount.  The Court is cognizant of prior cases where the judgment requested was not in line with the evidence supporting the request.  See, e.g., Joe Hand Promotions, Inc. v. Streshly, 655 F. Supp. 2d 1136, 1139 (S.D. Cal. 2009).  Accordingly, Plaintiff is hereby forewarned that the Court will not entertain future requests for judgment that are patently unreasonable based upon the evidence submitted.

[7] The Court notes that Defendant's "repeat offender" status is not mentioned anywhere in Plaintiff's brief.  Instead of raising and analyzing the issue in the memorandum of points and authorities, Plaintiff simply submitted a "Supplemental" declaration included with Plaintiff's moving papers.

517 U.S. 559, 580 (1996) ("exemplary damages must bear a 'reasonable relationship' to compensatory damages").  Since (C)(ii) Enhanced Damages are analogous to punitive damages, the same considerations are applicable.  Based upon the facts of this case, a 2.5 to 1 ratio (or 3.5 to 1 ratio, when viewed in combination with the (C)(i)(II) damages) between the statutory damages and the actual harm suffered is appropriate.  Accordingly, the Court will recommend that Plaintiff recover $5,500.00 in (C)(ii) Enhanced Damages.

**B.      Plaintiff's Request For Conversion Damages**

Plaintiff seeks $2,200.00 in damages for conversion.  Under California law, the elements for the tort of conversion are: (1) ownership or right to possession of property, (2) wrongful disposition of the property right of another, and (3) damages.  Don King Productions/Kingsvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995).  Wrongful interception of television broadcasts can constitute conversion.  Id.

Plaintiff submitted evidence demonstrating that Defendant would have paid $2,200.00 to Plaintiff if Defendant lawfully obtained the license to broadcast the Program at his restaurant. (Pl.'s Affidavit in Supp. of Pl.'s App. for Def. J. By The Court ¶ 8.)  Accordingly, the Court finds that $2,200.00 is an appropriate damage award for Plaintiff's conversion claim.

**IV.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that Plaintiff's motion for default judgment be PARTIALLY GRANTED and that judgment be entered in favor of Plaintiff and against Defendant in the total amount of $9,900.00, as follows:

A)      $2,200.00 in (C)(i)(II) Damages;

B)      $5,500.00 in (C)(ii) Enhanced Damages; and

C)      $2,200.00 in damages for Plaintiff's state tort claim for conversion.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with a copy, any party may file written objections with the court and

serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may constitute a waiver of the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 15, 2013**

UNITED STATES MAGISTRATE JUDGE